**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| _____ | : | |
| KATHLEEN GIBSON, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No. 06-0238 (SRC) |
| v. | : | |
| | : | **OPINION** |
| COMMISSIONER OF SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

**CHESLER, U.S.D.J.**

### INTRODUCTION

Plaintiff Kathleen Gibson, pursuant to 42 U.S.C. §§ 1383(c)(3), 405(g),[1] seeks review of

the Commissioner of Social Security Administration's ("Commissioner") decision denying her

application for Disability Income Benefits ("DIB") and Supplemental Security Income ("SSI")

benefits during the period at issue, March 2000 through December 2001.  Plaintiff argues that the

decision is not supported by substantial evidence and should be reversed.  For the reasons set

forth in this Opinion, this Court finds that the Commissioner's decision is supported by

substantial evidence and should be affirmed.

---

[1] These sections of the Social Security Act (hereinafter "Act") provides that any individual may obtain a review of any final decision of the Secretary of Health and Human Services ("Secretary") made subsequent to a hearing to which he or she was a party.  The federal district court for the district in which the plaintiff resides is the appropriate place to bring such action.  42 U.S.C. § 405(g).

**PROCEDURAL HISTORY**

On August 6, 2001, Plaintiff filed an application for DIB and SSI benefits pursuant to

Sections 216(i), 223, and 1614(a)(3)(A) of the Social Security Act, codified as 42 U.S.C. §§

416(i), 423, and 1382c(a)(3)(A), respectively.  (Tr. 22.)[2]  Plaintiff claimed disability as of July 8,

2001 due to breast cancer and status post-surgery.  (Tr. 94.)  Plaintiff received benefits at the

reconsideration level as of January 1, 2002, and then submitted a timely request for a hearing on

November 27, 2002.[3]  (Tr. 56-58.)  A hearing was held before the Administrative Law Judge

("ALJ") and at the hearing, Plaintiff, through counsel, amended her applications to seek a March

1, 2000, onset date.  (Tr. 22.)  The ALJ issued a decision on December 30, 2002, finding the

plaintiff "not disabled" during the period at issue, March 2000 through December 2001.  (Tr. 40-

43.)  Plaintiff requested a review of the December 30, 2002 ALJ decision, which the Appeals

Council granted.  (Tr. 66-67.)  The December 30, 2002 decision was vacated and remanded to an

ALJ for a new hearing to evaluate the issue of disability during the relevant period of March 1,

2000 through December 31, 2001.  (Tr. 66-67.)  ALJ Michal L. Lissek ("ALJ Lissek") issued a

decision on February 22, 2005, concluding that Plaintiff was not disabled during the relevant

period.  (Tr. 24.)  The following is a summary of ALJ Lissek's findings:

---

[2] The Act instructs the Secretary to file, as part of her answer, a certified copy of the transcript of the record, including any evidence used to formulate her conclusion or decision. 42 U.S.C. § 405(g). "Tr." refers to said transcript.

[3] The Administrative Law Judge awarded Plaintiff disability benefits as of January 1, 2002.  The only issue on review is whether Plaintiff was disabled during the amended period at issue, March 1, 2000 through December 31, 2001.

1.     The claimant meets the nondisability requirements for a period of
       disability and Disability Insurance Benefits set forth in Section 216(i) of
       the Social Security Act and is insured for benefits through June 30, 2003.

2.     The claimant has not been engaged in substantial gainful activity during
       the period at issue (March 1, 2000 through December 31, 2001).

3.     The claimant's left breast carcinoma, hypertension, heart disease, lower
       back pain, depression and anxiety are severe impairments, based upon the
       requirements in the Regulations (20 C.F.R. §§ 404.1520(c) and
       416.927(b)).

4.     These medically determinable impairments do not meet or medically equal
       any of the listed impairments in Appendix 1, Subpart P, Regulation No. 4
       during the period at issue.

5.     The claimant's allegations of disabling pain and limitations during the
       period at issue are not entirely credible.

6.     All of the medical opinions in the record have been carefully considered
       regarding the severity of the claimant's impairments (20 C.F.R. §§
       404.1527 and 416.927).

7.     The claimant has had, at all material times, the residual functional capacity
       to perform light work (20 C.F.R. §§ 404.1567 and 416.967).

8.     The claimant's past relevant work as a hotel laundry worker did not
       require the performance of work-related activities precluded by her
       residual functional capacity.  (20 C.F.R. §§ 404.1565 and 416.965).

9.     The claimant's medically determinable impairments did not prevent the
       claimant from performing her past relevant work during the period at
       issue.

10.    The claimant was not under a "disability" as defined in the Social Security
       Act, at any point from March 1, 2000 through December 31, 2001 (20
       C.F.R. §§  404.1520(f) and 416.920(f)).

(Tr. 33.)  Based on these findings, ALJ Lissek concluded that Plaintiff was not eligible for DIB

or SSI benefits during the period at issue under §§ 216(i), 223, 1602 and 1614(a)(3)(A) of the

Act.  (Tr. 34.)  On November 14, 2005, the Acting Administrative Appeals Judge denied

3

Plaintiff's appeal of ALJ Lissek's decision.  (Tr. 11-13.)  Pursuant to 42 U.S.C. §§ 1383(c)(3)

and 405(g), Plaintiff filed the instant action, seeking reversal of the Commissioner's decision.


## STATEMENT OF THE FACTS

**A.**    **Background**

Plaintiff, Kathleen Gibson, was born on June 5, 1944, and stopped working on March 23,

1998, when her employer went out of business.  (Tr. 340).  She states that she has not been

employed since this date because equivalent work was unavailable, and because of her claimed

disabilities.  (Tr. 340-345.)  Plaintiff testified that she completed school up to the eighth grade

and is able to read and write in English.  (Tr. 338.)  From February 1989 to August 1998,

Plaintiff worked as a hotel laundry worker, lifting about fifteen pounds of laundry and ironing it

by moving the laundry under a Mangle ironing machine.  (Tr. 340, 374.)  Plaintiff further

testified that the hotel job required her to stand for long periods of time.  (Tr. 374.)  Prior to this

job, Plaintiff was employed in various positions, such as a plastic worker and babysitter.  (Tr.

339, 373.)

**B.**    **Claimed Disabilities**

The ALJ determined that Plaintiff was disabled as of January 1, 2002 and Plaintiff was

issued disability benefits as of this date.  (Tr. 22.)  Plaintiff has requested an amendment of the

date of the onset and seeks disability benefits as of March 1, 2000.  (Tr. 332.)  Plaintiff testified

that she has difficulty using her left hand and arm for lifting and carrying as a result of a radical

mastectomy performed on her left breast to remove carcinoma.  (Tr. 333-334.)  Plaintiff also

4

testified that she suffered from high blood pressure.  (Tr. 359-360.)  Plaintiff's attorney argued

that Plaintiff has long-term osteoporosis and a herniated disc in her back.  (Tr. 334.)

Plaintiff testified that she was suffering from severe depression during the period at issue,

triggered by the breast cancer diagnosis and, as a result, often would not want to leave the house

or even get out of bed in the morning.  (Tr. 345-363.)  Plaintiff's attorney argued that Plaintiff's

diagnosed level of depression reduced her ability to deal with others in a social setting and

resulted in significant erosion of her residual functional capacity to the extent that the Plaintiff

would have been unable to return to past work or other jobs which exist in significant numbers.

(Tr. 361-362.)

## C.   <u>Medical Evidence Considered by the ALJ</u>

The record indicates that the Plaintiff has been evaluated by physicians on several

occasions.

### 1.   <u>Dr. Boris Livshits' Examination</u>

On April 3 and April 11, 2001, Dr. Livshits noted that Plaintiff had uncontrolled

hypertension, GERD, and COPD.  (Tr. 155.)  A mammography in April of 2001 revealed a left

breast lesion and on May 15, 2001, a biopsy confirmed the lesion to be breast cancer.  (Tr. 159.)

A biopsy taken subsequent to Plaintiff's radical mastectomy performed on June 7, 2001,

determined that the cancer had not spread to any of the thirteen lymph nodes examined.  (Tr. 141,

177.)  Dr. Livshits started Plaintiff on Paxil at the end of May 2001.  Plaintiff had not been

prescribed medication for depression prior to receiving her cancer diagnosis.  (Tr. 227-228.)

On Dr. Livshits' referral, Plaintiff underwent a bone densitometry scan on November 9,

2001, which revealed osteoporosis with a 1.9 times increase in lifetime fracture risk.  (Tr. 322.)

An MRI of the lumbar spine performed on February 4, 2002, revealed a central disc herniation with mild spinal canal and subarticular zone narrowing and disc bulging.  (Tr. 321.)  A series of epidural shots to the lower back were suggested as a pain relief treatment, but Plaintiff later rejected this recommendation.  (Tr. 300, 351.)

2.      Dr. Saukat Chaudery's Examination

Dr. Chaudery examined Plaintiff on April 19, 2001, and noted that an echocardiogram ("Echo") revealed significant LV hypertrophy with associated STT abnormalities.  (Tr. 147.)  Dr. Chaudery stated that Plaintiff had moderately severe aortic stenosis, possible aortic insufficiency, and mitral insufficiency, with significant hypertension which has been controlled by oral medication.  (Tr. 148.)  Plaintiff received a bilateral duplex carotid ultrasound, an Echo on May 8, and a stress test on May 30, 2001, all reviewed by Dr. Chaudery's colleague and revealing no serious abnormalities.  (Tr. 186.)

A follow up stress test performed by Dr. Chaudery on July 3, 2001, post-mastectomy, revealed no abnormalities and although an EKG revealed that Plaintiff had mild aortic, mitral, pulmonic, tricuspid valvular regurgitations, and significant arrhythmias, Dr. Chaudery decided no aggressive treatment was necessary because of both the normal stress test and LV systolic function.  (Tr. 146.)

3.      Dr. Gregory Shypula's Examination

Dr. Shypula examined Plaintiff on July 12, 2001, noting Plaintiff's history of non-invasive carcinoma of the left breast.  (Tr. 208.)  Plaintiff had post-mastectomy wound dehiscence, as well as arteriosclerotic heart disease with carotid artery stenosis.  (Tr. 214.)  Dr. Shypula did not recommend supplemental therapy in addition to the radical mastectomy because the carcinoma

6

had not invaded Plaintiff's lymph nodes, and prescribed Tamoxifen to be taken by Plaintiff as a precaution against recurrence of carcinoma.  (Tr. 208-210.)

On follow-up visits on August 16 and November 8, 2001, Dr. Shypula stated that Plaintiff was stable clinically and hematologically.  (Tr. 210, 312.)  Dr. Shypula noted in several progress reports, relating to the period of April 9, 2003 through September 29, 2004, that Plaintiff had not experienced a recurrence of cancer.  (Tr. 306, 308, 310, 312-315, 316.)

4.    Dr. Michael Block's Examination

Dr. Block examined Plaintiff on October 28, 2001.  In Dr. Block's report, Plaintiff stated that she did light housekeeping during the day and watched television.  (Tr. 206.)  Plaintiff also reported exhaustion during the day as well as decreased energy, difficulty sleeping, and diminished concentration.  (Tr. 206.)  Dr. Block diagnosed Plaintiff with a Global Assessment of Functioning ("GAF") of 45.[4]  (Tr. 207.)  Dr. Block's assessment, based on Plaintiff's statements, reported mild to moderate impairment in understanding and memory but more severe impairment in sustained concentration, and in persistence in performing tasks at pace and interaction in social settings.  (Tr. 206.)

5.    State Agency Doctors' Review of Plaintiff's Medical Records

On November 5, 2001, Dr. Amy Brams, a state agency medical consultant, examined Plaintiff.  (Tr. 109.)  Dr. Brams found that Plaintiff suffered from depressive disorder with sleep disturbance, decreased energy, and difficulty concentrating or thinking.  (Tr. 112.)  Dr. Brams

_____

[4]A GAF score of 50 or below indicates serious symptoms and/or serious impairment in functioning.  Psychiatrists and the Treatment of Severely Mentally Ill Patients, http://www.psych.org/edu/ann_mtgs/ips/04/programbk/56thipsprogrambk.pdf (last visited March 27, 2007).

stated that Plaintiff had a moderate restriction of daily living activities, social functioning, and maintaining concentration.  (Tr. 119.)  Dr. Brams also noted that none of these factors met the "C" criteria.[5]  (Tr. 120.)

Dr. Brams performed a mental residual functional capacity assessment of Plaintiff, noting moderate limitation in Plaintiff's ability to maintain attention and concentration for extended periods, her ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, her ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods.  (Tr. 123-125.)  Dr. Brams also noted that Plaintiff had not participated in any inpatient or outpatient mental health treatment and was prescribed Paxil by her primary care physician.  (Tr. 125.)  Dr. Brams determined that Plaintiff had the ability to follow simple instructions, attend and concentrate, keep adequate pace and persistence, and relate and adapt to routine tasks in a low contact work setting.  (Tr. 125.)

Approximately six months later, on November 5, 2002, Dr. J.F. Joynson examined Plaintiff and did not note any changes from Dr. Brams' assessment on November 5, 2001.  (Tr. 243-244.)  On November 15, 2002, Dr. Joynson noted, during a mental residual functional capacity assessment of Plaintiff, that Plaintiff had difficulty with persistence and pace and elaborated that Plaintiff would be unable to complete a normal workday and workweek without interruption from psychologically based symptoms.  (Tr. 245.)

---

[5] "C" criteria are comprised of the presence of organic mental, schizophrenic, or affective mental illness, occurring for a duration of at least two years which has caused more than a minimal limitation of ability to do any basic work activity, with symptoms or signs currently attenuated by medication or psychosocial support.  (Tr. 119.)

6.     Dr. Jackie Farnese's Examination

On May 8, 2002, Dr. Jackie Farnese examined Plaintiff, reporting that Plaintiff visited a

psychiatrist once a month.  (Tr. 237.)  Dr. Farnese noted that Plaintiff's appearance was fair to

poor, tangential but redirectable at times, and that Plaintiff had coherent, logical, and relevant

thought process.  (Tr. 238.)  Dr. Farnese also noted that Plaintiff had good short-term, but poor

long-term memory.  (Tr. 238.)  Plaintiff was diagnosed with major depression, moderate single

episode adjustment disorder with anxiety, and a GAF of 50.  (Tr. 239.)  A report of contact from

May 15, 2002 documented that, while Plaintiff began taking Paxil in May of 2001, she did not

begin psychiatric treatment until February 2002 and has since attended sporadically.  (Tr. 228,

241.)

**DISCUSSION**

A.     **Standard of Review**

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C.

§ 405(g).  This Court must affirm the Commissioner's decision if it is "supported by substantial

evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Stunkard v. Sec'y of Health and Human Services,

841 F.2d 57, 59 (3d Cir. 1988); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986).  Substantial

evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co.

v. NLRB, 305 U.S. 197, 229 (1938)).  Substantial evidence "is more than a mere scintilla of

evidence but may be less than a preponderance."  McCrea v. Comm'r of Soc. Sec., 370 F.3d 357,

360 (3d Cir. 2004).  The reviewing court must consider the totality of the evidence and then

determine whether there is substantial evidence to support the Commissioner's decision.  See

Taybron v. Harris, 667 F.2d 412, 413 (3d Cir. 1981).

The reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom. Williams v. Shalala, 507 U.S. 924 (1993) (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984)). If the ALJ's findings of fact are supported by substantial evidence, this Court is bound by those findings, "even if [it] would have decided the factual inquiry differently." Fargnoli v. Massanari, 247 F.3d 34, 35 (3d Cir. 2001); see also Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

In determining whether there is substantial evidence to support the Commissioner's decision, the reviewing court must consider: "(1) the objective medical facts; (2) the diagnoses and expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the claimant and corroborated by family and neighbors; (4) the claimant's educational background, work history and present age." Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1973). "The presence of evidence in the record that supports a contrary conclusion does not undermine the Commissioner's decision so long as the record provides substantial support for that decision." Sassone v. Comm'r of Soc. Sec., 165 Fed. Appx. 954, 955 (3d Cir. 2006) (citing Blalock, 483 F.2d at 775).

**B.    Standard for Awarding Benefits Under the Act**

The claimant bears the initial burden of establishing his or her disability. 42 U.S.C. § 423(d)(5). To qualify for DIB or SSI benefits, a claimant must first establish that he is needy and aged, blind, or "disabled." 42 U.S.C. § 1381. A claimant is deemed "disabled" under the Act if he is unable to "engage in substantial gainful activity by reason of any medically determinable

10

physical or mental impairment which can be expected to result in death or which has lasted or can

be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A);

see also Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987).  Disability is predicated on whether

a claimant's impairment is so severe that he "is not only unable to do his previous work but

cannot, considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

Finally, while subjective complaints of pain are considered, alone, they are not enough to establish

disability.  42 U.S.C. § 423(d)(5)(A).  To demonstrate that a disability exists, a claimant must

present evidence that his or her affliction "results from anatomical, physiological, or

psychological abnormalities which are demonstrable by medically accepted clinical and laboratory

diagnostic techniques."  42 U.S.C. § 423(d)(3).

**C.    The Five-Step Evaluation Process**

Determinations of disability are made by the Commissioner, pursuant to the five-step

process outlined in 20 C.F.R. § 404.1520.  The claimant bears the burden of proof at steps one

through four.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

At the first step of the evaluation process, the Commissioner must determine whether the

claimant is currently engaged in substantial gainful activity.[6]  20 C.F.R. § 404.1520(b).  If a

claimant is found to be engaged in such activity, the claimant is not "disabled" and the disability

claim will be denied.  Id.; Yuckert, 482 U.S. at 141.

At step two, the Commissioner must determine whether the claimant is suffering from a

severe impairment.  20 C.F.R. §§ 404.1520(a)(ii), (c).  An impairment is severe if it "significantly

_____

[6] Substantial gainful activity is "work that involves doing significant and productive physical or mental duties; and is done (or intended) for pay or profit."  20 C.F.R. § 404.1510.

11

limits [a claimant's] physical or mental ability to do basic work activities."  Id.  In determining whether the claimant has a severe impairment, the age, education, and work experience of the claimant will not be considered.  Id.  If the claimant is found to have a severe impairment, the Commissioner addresses step three of the process.

At step three, the Commissioner compares the medical evidence of the claimant's impairment(s) with the impairments presumed severe enough to preclude any gainful work, listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  See 20 C.F.R. § 404.1594(f)(2).  If a claimant's impairment meets or equals one of the listed impairments, he will be found disabled under the Social Security Act.  If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to step four.

In Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 119-20, 120 n.2 (3d Cir. 2000), the Third Circuit found that to deny a claim at step three, the ALJ must specify which listings[7] apply and give reasons why those listings are not met or equaled.  In Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004), however, the Third Circuit noted that "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis.  Rather, the function of Burnett is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review."  Id.  An ALJ satisfies this standard by "clearly evaluating the available medical evidence in the record and then setting forth that evaluation in an opinion, even where the ALJ did not identify or analyze the most relevant listing."  Scatorchia v. Comm'r of Soc. Sec., 137 Fed. Appx. 468, 471 (3d Cir. 2005).

Step four requires the ALJ to consider whether the claimant retains the residual functional

---

[7] Hereinafter, "listing" refers to the list of severe impairments as found in 20 C.F.R. Part 404, Subpart P, Appendix 1.

capacity ("RFC") to perform his past relevant work.  20 C.F.R. § 404.1520(e).  If the claimant is

able to perform his past relevant work, he will not be found disabled under the Act.  In Burnett,

the Third Circuit set forth the analysis at step four:

> In step four, the ALJ must determine whether a claimant's residual functional
> capacity enables her to perform her past relevant work.  This step involves three
> substeps: (1) the ALJ must make specific findings of fact as to the claimant's
> residual functional capacity; (2) the ALJ must make findings of the physical and
> mental demands of the claimant's past relevant work; and (3) the ALJ must
> compare the residual functional capacity to the past relevant work to determine
> whether claimant has the level of capability needed to perform the past relevant
> work.

Burnett, 220 F.3d at 120.  If the claimant is unable to resume his past work, and his condition is

deemed "severe," yet not listed, the evaluation moves to the final step.

At the fifth step, the burden of production shifts to the Commissioner, who must

demonstrate that there are other jobs existing in significant numbers in the national economy

which the claimant can perform, consistent with his medical impairments, age, education, past

work experience, and residual functional capacity.  20 C.F.R. §§ 404.1512(g), 404.1560(c)(1).  If

the ALJ finds a significant number of jobs that claimant can perform, the claimant will not be

found disabled.  Id.

When the claimant has only exertional limitations, the Commissioner may utilize the

Medical-Vocational Guidelines found in 20 C.F.R. Part 404, Subpart P, Appendix 2 to meet the

burden of establishing the existence of jobs in the national economy.  These guidelines dictate a

result of "disabled" or "not disabled" according to combinations of factors (age, education level,

work history, and residual functional capacity).  These guidelines reflect the administrative notice

taken of the numbers of jobs in the national economy that exist for different combinations of these

factors.  20 C.F.R. Part 404, Subpart P, Appendix 2, Paragraph 200.00(b).  When a claimant's

vocational factors, as determined in the preceding steps of the evaluation, coincide with a combination listed in Appendix 2, the guideline directs a conclusion as to whether an individual is disabled.  20 C.F.R. § 404.1569; Heckler v. Campbell, 461 U.S. 458 (1983).  The claimant may rebut any finding of fact as to a vocational factor.  20 C.F.R. Part 404, Subpart P, Appendix 2, Paragraph 200.00(b).

Additionally, pursuant to 42 U.S.C. § 423(d)(2)(B), the Commissioner, in the five-step process, "must analyze the cumulative effect of the claimant's impairments in determining whether she is capable of performing work and is not disabled."  Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999).  Moreover, "the combined impact of the impairments will be considered throughout the disability determination process."  42 U.S.C. § 423(d)(2)(B); 20 C.F.R. § 1523.  However, the burden still remains on the Plaintiff to prove that the impairments in combination are severe enough to qualify him for benefits.  See Williams v. Barnhart, 87 Fed. Appx. 240, 243 (3d Cir. 2004) (placing responsibility on the claimant to show how a combination-effects analysis would have resulted in a qualifying disability).

While Burnett involved a decision in which the ALJ's explanation of his step three determination was so inadequate as to be beyond meaningful judicial review, the Third Circuit applies its procedural requirements, as well as their interpretation in Jones, to every step of the decision.  See, e.g., Rivera v. Commissioner, 164 Fed. Appx. 260, 262 (3d Cir. 2006).  Thus, at every step, "the ALJ's decision must include sufficient evidence and analysis to allow for meaningful judicial review," but need not "adhere to a particular format."  Id.

**D.      ALJ Lissek's Findings**

ALJ Lissek applied the five-step sequential evaluation and determined that although Plaintiff received disability benefits as of January 1, 2002, Plaintiff was not disabled during the

14

amended period at issue within the meaning of the Act.  (Tr. 33.)  ALJ Lissek found that Plaintiff

satisfied the first step of the evaluation process, given that Plaintiff was not engaged in substantial

gainful activity at the date of the alleged onset of disability.  (Tr. 33.)

At step two of the evaluation, ALJ Lissek found Plaintiff's impairments during the period

of issue to be: a history of left breast carcinoma, status-post surgery, hypertension, heart disease,

lower back pain, depression and anxiety.  (Tr. 29.)  ALJ Lissek concluded that Plaintiff's

impairments were "severe" within the meaning of the Act.  (Tr. 29.)

At step three, ALJ Lissek concluded that although Plaintiff's impairments were "severe,"

they did not "meet or medically equal, either singly or in combination, any of the impairments

listed in [20 C.F.R. Part 404, Subpart P, Appendix 1]."  (Tr. 30.)  Plaintiff failed to demonstrate

that her breast cancer satisfied the requirements of listing 13.09 based on medical evidence that

Plaintiff's prescribed treatment consisted of Tamoxifen, and did not include chemotherapy or

radiation.  (Tr. 30.)  ALJ Lissek also noted that doctors Chimene and Shypula reported no

recurrence or spreading of cancer since her breast cancer surgery on July 7, 2001.  (Tr. 30.)

ALJ Lissek also concluded that Plaintiff had failed to demonstrate that her hypertension

and heart disease satisfied the requirements of listing 4.00.  (Tr. 30.)  In support of this

conclusion, ALJ Lissek noted that Plaintiff had hypertension and heart disease, but that Dr.

Fechner reported Plaintiff's hypertension had been brought under control by medication.  (Tr. 30.)

Dr. Chaudery noted on July 3, 2001 that Plaintiff did not require aggressive cardiovascular

treatment in light of a normal stress test and LV systolic function.  (Tr. 30.)

ALJ Lissek further noted that Plaintiff's lower back pain did not satisfy the requirements

of listing 1.04 because MRI's performed on February 4, 2002, and May 20, 2003, revealed no

significant disc herniation.  (Tr. 30-31.)  The ALJ emphasized that Plaintiff's complaints of back

pain were insufficient to determine a disability due to Plaintiff's decision not to proceed with recommended epidural injections to treat her lower back pain. (Tr. 31.) Therefore, Plaintiff's back pain did not meet the requirements of listing 1.04, due to the lack of evidence of any type of spinal disorder. (Tr. 31.)

ALJ Lissek noted that Plaintiff was examined by Dr. Block on October 28, 2001, and diagnosed with a GAF of 45. (Tr. 30.) The ALJ, however, gave the score little credit because Dr. Block's findings were based mainly on Plaintiff's subjective complaints. (Tr. 30.) Additionally, although Dr. Brams agreed with Dr. Block that Plaintiff suffered from a depressive disorder, Dr. Block felt that Plaintiff could follow simple instructions and perform routine work in a low-impact setting. (Tr. 30.) ALJ Lissek further noted that, although Plaintiff's primary medical doctor prescribed Paxil for her in May 2001, she did not seek psychiatric treatment for depression until February 2002, after the period at issue. (Tr. 30.) The judge observed as well that, although Plaintiff's primary care physician prescribed Plaintiff Paxil beginning in May 2001, Dr. Joynson's medical examination, which revealed a decline in Plaintiff's memory and attention between October 2001 and May 2002 coincided with Plaintiff's lack of additional mental health treatment until February 2002. (Tr. 30.) Based on this evidence, ALJ Lissek adopted Dr. Brams' findings as to Plaintiff's functional capacity, noting that Plaintiff had not sought treatment for depression until February 2002 and that, although Plaintiff's mental decline did not occur suddenly, but was a gradual process, the original onset date of January 2002 was reasonable. (Tr. 30.) Based on this evidence, ALJ Lissek concluded that Plaintiff's depression and anxiety did not satisfy the requirements of listings 12.04 and 12.06 during the period at issue. (Tr. 30.)

ALJ Lissek considered the severity of Plaintiff's claims of debilitating pain and other subjective complaints and concluded that they were not credible because they were not adequately

16

supported by the record, including all objective evidence.  (Tr. 31.)  ALJ Lissek also held that

Plaintiff's subjective complaints were inconsistent with Social Security ruling 96-7p and 20

C.F.R. § 404.1529.  (Tr. 31.)  In evaluating the subjective complaints, ALJ Lissek gave careful

> consideration to: (1) the nature, location, onset duration, frequency, radiation, and
> intensity of any pain; (2) precipitating and aggravating factors (e.g. movement,
> activity, environmental conditions); (3) type, dosage effectiveness, and adverse
> side-effects of any pain medications; (4) treatment, other than medication, for relief
> of pain; (5) functional restrictions and (6) the claimant's daily activities and work
> record.

(Tr. 31.) In sum, ALJ Lissek held that Plaintiff's subjective complaints failed to demonstrate the

existence of a qualifying severe impairment.  (Tr. 31.)

At step four and the final step of ALJ Lissek's analysis, ALJ Lissek determined that,

based on Dr. Bram's assessment, Plaintiff retained the residual functional capacity to perform

routine work in a low-impact setting.  (Tr. 30.)  ALJ Lissek also noted that although Plaintiff was

prescribed Paxil in May 2001, she only sought treatment for depression subsequent to the period

at issue.  (Tr. 30.)  ALJ Lissek concluded that Plaintiff's RFC sufficiently enabled her to perform

her past relevant work as a laundry worker in a hotel.  (Tr. 32.)  ALJ Lissek determined that

Plaintiff had the ability to perform light work as defined by 20 C.F.R. § 404.1567 and 416.927.[8]

(Tr. 32.)  ALJ Lissek noted that Plaintiff suffered from depressive disorder and anxiety which

moderately limited her daily activities, her ability to partake in social interaction, concentration,

persistence and pace, but resulted in no decompensation.  (Tr. 32.)  Therefore, ALJ Lissek

concluded that, between March 2000 and December 20001, these impairments would not interfere

with Plaintiff's ability to follow simple instructions and perform routine work in a low contact

---

[8] Light work involves lifting and carrying up to twenty pounds occasionally and ten
pounds frequently; standing and/or walk up to six hours in an eight hour day; and sit up to six
hours in an eight hour day.  20 C.F.R. §§ 404.1567(b), 416.967(b).

work setting.  (Tr. 32.)  The conclusion that Plaintiff retained the RFC to perform her past relevant work as a laundry worker during the period at issue did not necessitate an analysis of step five of the evaluation process.

**E.      Analysis**

Plaintiff contends that ALJ Lissek's decision should be reversed because it is not supported by substantial evidence.  (Pl.'s Mem. L. at 10.)  Plaintiff contends that ALJ Lissek failed to recite the probative evidence supporting her findings and that ALJ Lissek did not provide an articulated basis for the conclusion that Plaintiff was not disabled.  (Pl. Mem. L. at 13.) Finally, Plaintiff claims ALJ Lissek erred by not engaging in a task by task comparison of Plaintiff's RFC to her past relevant work. (Pl.'s Mem. L. at 21.)

**1.      The ALJ Examined All Probative Evidence and Provided Substantial Evidential Support in Deciding That Plaintiff Was Not Disabled During the Period at Issue.**

Plaintiff claims that ALJ Lissek failed to examine all probative evidence and provide substantial evidence in concluding that Plaintiff could return to her past relevant work as a hotel laundry worker.  This court must affirm ALJ Lissek's decision as long as it is "supported by substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Stunkard v. Sec'y of Health and Human Services, 841 F.2d 57, 59 (3d Cir. 1988).  Substantial evidence is "more than a scintilla of evidence but may be less than a preponderance."  McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004).

To determine whether there is substantial evidence, this court must determine whether the ALJ considered: "(1) the objective medical facts; (2) the diagnoses and expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the claimant and corroborated by family and neighbors; (4) the claimant's educational

background, work history and present age." Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir.

1973).  The Plaintiff has the burden of presenting evidence that his or her affliction "results from

anatomical, physiological, or psychological abnormalities which are demonstrable by medically

accepted clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).   If the Plaintiff

fails to prove that his or her claimed disability satisfies the requirements of the listings during the

period at issue, then the ALJ will determine whether the claimant retains the RFC to perform past

relevant work.  The Plaintiff has the burden to prove that he or she is unable to perform relevant

past work in order to proceed to step five of the evaluation process.  See 20 C.F.R. §

404.1594(f)(2); 20 C.F.R. § 404.1520(e).

Plaintiff makes several vague arguments to the effect that the ALJ did not sufficiently

explain her reasoning and did not base her decision on substantial evidence.  As reviewed above,

the ALJ sufficiently explained her reasoning and based it on substantial evidence.

To succeed on appeal, Plaintiff must articulate with specificity, how, at a particular step of

the five-step analysis, the ALJ erred.  Plaintiff has not done so.  At step one, ALJ Lissek

determined that Plaintiff satisfied the requirement of 20 C.F.R. § 404.1520(b) based on Plaintiff's

testimony that she was not gainfully employed during the period at issue.  (Tr. 29, 340-345.)  At

step two, the ALJ determined that Plaintiff's impairments were a history of breast carcinoma,

status-post surgery, hypertension, heart disease, lower back pain, depression and anxiety.  (Tr. 29.)

ALJ Lissek determined that the impairments met the definition of "severe" according to 20 C.F.R.

§§ 404.1520 and 416.920 because the impairments significantly limited Plaintiff's physical and

mental ability to perform basic work activities.  (Tr. 29.)  Once the ALJ determined that Plaintiff's

impairments were "severe," she compared medical evidence of Plaintiff's impairments with the

impairments of the listings presumed to preclude any gainful work.  See 20 C.F.R. §

404.1594(f)(2), (Tr. 33.)  ALJ Lissek concluded that, although Plaintiff's impairments were severe, they did not medically equal any impairments included in the listings.  See 20 C.F.R. § 404.1594(f)(2), (Tr. 33.)

Medical evidence supported ALJ Lissek's conclusion that Plaintiff's breast cancer treatment consisted only of Tamoxifen, without chemotherapy or radiation.  (Tr. 30.)  Additional reports of doctors Chimene and Shypula concluded that Plaintiff experienced no recurrence or spreading of cancer since Plaintiff's mastectomy.  (Tr. 30.)  Based on this evidence, ALJ Lissek concluded that Plaintiff failed to satisfy listing 13.09.  (Tr. 30.)

Based on evidence that Plaintiff's hypertension had been brought under control by medication as well as Dr. Chaudery's report that Plaintiff did not require aggressive cardiovascular treatment, ALJ Lissek determined that Plaintiff did not meet the requirements of listing 4.00.  (Tr. 30.)  ALJ Lissek also concluded that the evidence relating to Plaintiff's lower back pain did not satisfy the requirements of listing 1.04 because an MRI performed on Plaintiff revealed no disc herniation and because she rejected recommended epidural shots as a pain relief treatment.  (Tr. 30-31.)

ALJ Lissek also determined that Plaintiff's mental impairments, depression and anxiety, did not satisfy the requirements of listings 12.04 and 12.06.  (Tr. 30.)  ALJ Lissek determined that, although Dr. Block diagnosed Plaintiff with a GAF of 45, the score was based on subjective complaints and not substantiated by objective evidence.  (Tr. 30.)  Instead, ALJ Lissek relied on Dr. Brams' conclusion that Plaintiff could follow simple instructions and perform routine work in a low-impact setting despite suffering from depressive disorder.  (Tr. 30.)  The ALJ noted that, although Plaintiff was prescribed Paxil in May 2001, she did not seek psychiatric treatment for depression until February 2002.  (Tr. 30.)

ALJ Lissek also concluded that Plaintiff's subjective complaints were unreliable because they were unsupported by objective evidence in the record.  (Tr. 31.)  ALJ Lissek's determination that Plaintiff's impairments did not meet the definition of "severe" according to the listing required her to proceed to step four of the five-step analysis to determine whether Plaintiff's RFC would enable her to return to her past work as a hotel laundry worker.  20 C.F.R. § 404.1520(e).  Based on the evidence in the record and Plaintiff's testimony, ALJ Lissek determined that Plaintiff's depression did not reduce her RFC until after the period at issue, and that, during the period at issue, she was able to continue her past relevant work as a hotel laundry worker because she retained the RFC for light work.

Plaintiff's one step-specific argument concerns step four: Plaintiff claims that ALJ Lissek did not engage in a task by task comparison between Plaintiff's RFC and her past work as a laundry worker.   It is true that ALJ Lissek did not perform a task by task comparison of Plaintiff's past work as a hotel laundry worker and her RFC of light work, but this is at most harmless error.  Plaintiff failed to satisfy her burden of proof at step four that her RFC would not allow her to perform her past relevant work.  ALJ Lissek concluded that Plaintiff would be able to perform light work according to 20 C.F.R. §§ 404.1567(b) and 416.967(b) because Plaintiff, as a hotel laundry worker, was required to lift about fifteen pounds of laundry and iron the laundry by moving it under a Mangle ironing machine.  (Tr. 30.)  Additionally, ALJ Lissek concluded that Plaintiff's depressive and anxiety disorders, prior to the date last insured, did not preclude her from performing light work, based on Dr. Brams' assessment that Plaintiff could follow simple instructions and perform routine work in a low-impact setting.  ALJ Lissek's decision will be affirmed as it is supported by substantial evidence in accordance with 42 U.S.C. §§ 405(g) and 1383(c)(3).

_____

## **CONCLUSION**

For the reasons stated above, this Court finds that the Commissioner's decision is supported by substantial evidence and is affirmed.

s/ Stanley R. Chesler
STANLEY R. CHESLER, U.S.D.J.

Dated: March 29, 2007

22